**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X
:
JAMES P. ANGLIM,                                       :
:
             Petitioner,      :
:
  vs.                                                  :   Civ. No.
:
THE VERTICAL GROUP,                                    :
:
                              :   ECF Case
             Respondent.      :
-------------------------------------------------------X

**PETITIONER'S MEMORANDUM OF LAW
IN SUPPORT OF PETITION TO CONFIRM, VACATE AND MODIFY THE
ARBITRATION AWARD AND ENTRY OF JUDGMENT THEREON**

 

LAX & NEVILLE LLP
Barry R. Lax, Esq.
Sandra Lahens, Esq.
1450 Broadway, 35th Floor
New York, NY 10018
(212) 696-1999

*Attorneys for Petitioner
James P. Anglim*

Pursuant to Sections 9, 10 and 11 of the Federal Arbitration Act ("FAA"), 9. U.S.C. §9, Petitioner James Anglim respectfully submits this memorandum of law in support of his Petition to Confirm, Modify and Vacate an Arbitration Award issued in the matter of <u>James P. Anglim v. The Vertical Group</u>, FINRA Dispute Resolution #13-03608 (the "Award"). (*See* Lahens Dec. at Ex. A).

## PRELIMINARY STATEMENT

At all relevant times, Petitioner was an institutional equities trader registered with the Financial Industry Regulatory Authority ("FINRA") (CRD No. 3040791). From 2005 to 2013, he was employed by Respondent The Vertical Group ("Respondent" or "Vertical") (CRD No. 104353), a broker-dealer and FINRA member firm with corporate headquarters in New York City. Between 2007 and 2013, Respondent unlawfully deducted hundreds of thousands of dollars from Petitioner's wages as a "reserve" against his trading losses. After he left Vertical, Respondent refused to pay Petitioner the balance of this "reserve" and he was forced to bring a claim for unpaid wages under the New York Labor Law ("NYLL"). (*See* Lahens Dec., Ex. B). FINRA Rule 13200 required the parties to submit the dispute to a FINRA arbitration, which took place in New York over six hearing days in January 2016.

On February 3, 2016, a three member FINRA Panel issued an Award. In Section 1 of the Award, the Panel found that Respondent unlawfully deducted from and failed to pay Petitioner's wages in violation of NYLL §§ 191, (Lahens Dec., Ex. C), and 193,[1] (Lahens Dec., Ex. D), and ordered Respondent to pay Petitioner $50,000 and prejudgment interest running from December 12, 2013 to January 15, 2016. (Lahens Dec., Ex. A). Respondent has subsequently offered full

---

[1] Respondent withdrew its Counterclaims midway through the hearing. Consequently, the only claim before the Panel was Petitioner's, upon which he prevailed.

1

payment on the Award and the Panel's liability determination is not in dispute.[2] While Petitioner believes that the Panel's damages determination is in manifest disregard of the law,[3] he is not challenging it here. Both the liability determination and Petitioner's NYLL claim should be confirmed by this Court.

In Section 2 of the Award, the Panel denied all other relief, including attorneys' fees. This is the section of the Award that Petitioner is seeking to vacate and modify. Having found for Petitioner upon a wage claim brought under Article 6 of the NYLL, attorneys' fees is mandatory under NYLL § 198(1)(a). (Lahens Dec., Ex. E). There is no question that the Panel was aware of the statutory provisions and that they were mandatory, these having been brought to their attention by Petitioner's Statement of Claim, Pre-hearing Brief, (Lahens Dec., Ex. F), opening statement, closing argument (Lahens Dec., Ex. G), and damages submission, which included an Affirmation of Attorneys' Fees and Costs (Lahens Dec., Ex. H and I). The statutes themselves were given to the Panel on the first day of the hearing. Finally, Petitioner's counsel handed out copies of the relevant statutes while discussing each provision in his closing argument. (Lahens Dec. Ex. G).

The standards for modification of an arbitration award under Section 11 and vacatur of an arbitration award under Section 10 of the Federal Arbitration Act ("FAA") are high. In light of the strong federal policy favoring arbitration and the complexities of review, federal courts seldom grant relief that disturbs the merits of the underlying arbitration. This case, however, is

---

[2] Petitioner's counsel has deposited into its trust account the check for the full amount of the Award under Section 1, but has not made any distributions.

[3] It was undisputed that at least $150,000 was deducted for the "reserve" and never paid to Petitioner. To reach its Award, the Panel must have determined that these were unlawful deductions from earned wages. NYLL § 198(1)(a) states in pertinent part: In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court **shall allow such employee to recover the full amount** of any underpayment…" (emphasis added). As Respondent dropped its counterclaims and did not assert, let alone prove, any affirmative defense entitling it to an offset, the undisputed "reserve," in the amount of $150,000, should have been awarded as a matter of law.

2

simple: Petitioner brought a claim for unpaid wages under Article 6 of the NYLL and the Panel found for Petitioner and awarded unpaid wages, the statute unqualifiedly requires recovery of attorneys' fees on successful claims for unpaid wages under Article 6 of the NYLL, and the Panel, aware of the requirement, denied recovery of attorneys' fees.  It is settled law in this District both that an arbitrator's knowing failure or refusal to award statutory attorneys' fees is manifest disregard of the law and that the court will determine the amount of the fees and modify the award accordingly.

For the reasons set forth herein, the Court should grant the Petition, confirm Section 1 of the Award, and vacate that part of the award denying attorneys' fees in Section 2 and modify the Award so as to include the statutorily mandated attorneys' fees.

## LEGAL STANDARD

The enforcement of arbitration awards is guided by 9 U.S.C. § 9:

> [A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title . . . .

9 U.S.C. § 9.  Confirmation of an arbitration award under Section 9 of the FAA is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *Trustees for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Training Program Fund v. YES Restoration*, 2015 WL 3822764, at *3 (S.D.N.Y. 2015) (citing *D.H. Blair & Co. v. Gottdienier,* 462 F.3d 95, 110 (2d Cir. 2006)).

Modification of an arbitration award is governed by Section 11 of the Federal Arbitration Act:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
>
> **(a)** Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> **(b)** Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> **(c)** Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C.A. § 11.  "To the extent the Award may reflect a deficiency not touching the merits to the controversy regarding liability, the Court has authority to correct it so as to effect the intent thereof and promote justice between the parties." *Commercial Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford*, 526 F. Supp. 2d 424, 431 (S.D.N.Y. 2007).  A court may modify an Award as to relief and damages where an arbitrator's decision manifestly disregards statutory requirements. *See*, *e.g.*, *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 822 (2d Cir. 1997); *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 469 (S.D.N.Y. 1997); *Asturiana De Zinc Mktg., Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670, 675 (S.D.N.Y. 1998).

Vacatur of an arbitration award is governed by Section 10 of the Federal Arbitration Act, which enumerates four specific grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly

>executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "In addition to the section 10(a) grounds for vacatur, [the Second Circuit] ha[s] recognized a judicially-created [gloss on the specific] ground[s] [for vacatur], namely that an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *Rubenstein v. Advanced Equities, Inc.*, 2014 WL 1325738 at \*6 (S.D.N.Y. 2014).

"To vacate an award on the basis of a manifest disregard of the law, the court must find something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law.  The two part showing requires the court to consider, first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.  In determining an arbitrator's awareness of the law, [courts] impute only knowledge of governing law identified by the parties to the arbitration." *Rubenstein v. Advanced Equities, Inc*., 2014 WL at \*11. (internal quotations and citations omitted). *See Jock v. Sterling Jewelers Inc*., 646 F.3d 113, 122 at fn. 1 (2d Cir. 2011); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002); *McLaughlin, Piven, Vogel Sec., Inc. v. Ferrucci*, 67 A.D.3d 405, 406 (1st Dept 2009);

## FACTUAL BACKGROUND

From May 2005 through November 8, 2013, Respondent employed Petitioner as an institutional equities trader and salesman.  (Lahens Dec. Ex. B, ¶¶ 7, 11).  Throughout this period, he was paid a 50% commission on the revenue his deals generated after certain itemized deductions.  (*See* Petitioner's Profit and Loss Statements ("P&L"), Lahens Dec., Ex. J). Petitioner received W-2s reflecting eight years of continuous employment by Respondent, (Lahens Dec., Ex. K), and he participated in health, vision and dental plans, (Lahens Dec., Ex. J

and K).  As a commissioned salesperson, Petitioner was indisputably an "employee" for the purposes of the NYLL, and his commissions were indisputably wages afford the protections of Article 6, NYLL § 191(1)(c).  In finding for Petitioner on his NYLL claim, the Panel necessarily concluded that he was an employee and his commissions were wages.

Beginning in 2007, Respondent unlawfully withheld hundreds of thousands of dollars from Petitioner's wages as a "reserve" to cover his trading losses.  These deductions were taken after the commissions were calculated, and were characterized and accounted for as a contingent liability both to Petitioner and, for much of the period, on Respondent's books.  However, his "reserve," in fact, had not existed since August 2012.  The reserve amount of $150,000 was journaled out of the liability section of Vertical's balance sheet and into the firm's capital on July 31, 2012.  From August 2012 through Petitioner's termination in October 2013, the $150,000 reserve was nevertheless detailed on every monthly P&L distributed to Petitioner.[4]  (Lahens Dec. Ex. J, L1, L2 and L3).

At the time he left Vertical, Petitioner's October 2012 P&L showed a net profit and a "reserve" balance of $150,000. (Lahens Dec. Ex. J). When Petitioner left the firm, Respondent nevertheless refused Petitioner's demand that it release his money.  Respondent has variously claimed that the "reserve" was used (i) to pay attorneys' fees defending a FINRA investigation that never targeted Petitioner; (ii) to pay regulatory fines Respondent incurred on violations in which Petitioner played no part; (iii) to cover a series of trades Petitioner made on which Respondent profited, and; (iv) to recapitalize the firm to save it from a net capital violation.  The first three explanations are not plausible as the reserve was transferred from Vertical's liabilities to its assets more than a year before any of these purported expenses were incurred.  The fourth

---

[4] Respondent continued to report the "reserve" to Petitioner on his Profit and Loss Statements while omitting to report it to FINRA and the Securities and Exchange Commission ("SEC").

6

explanation was raised midway through the hearing and repurposed the "reserve" Respondent first alleged it demanded as a hedge against Petitioner's trading activity into a voluntary undertaking Petitioner, who was never a shareholder or officer of Respondent and profited only from his own trading activity, not only agreed to but suggested.

Respondent was at liberty to assert four contradictory explanations for what happened to the money it deducted from Petitioner's wages because, as was undisputed in the arbitration, there was no written agreement of any kind to any deductions for any purpose, a violation of NYLL §§ 193(1)(b) and 191(c)(1). Not one of the proffered explanations is a permissible basis for deductions from wages, a violation of NYLL § 193(1)(b)(i-xiv). The deductions were not voluntary, the various changes to the terms of the deductions were never documented or consented to in writing, and no accounting was made of the deductions or the use of the "reserve," whatever that might have been, all violations of NYLL §§ 193(1)(a) and 193(1)(b). The commissions were not paid within one month of being earned, a violation of NYLL § 191(1)(c), nor within five business days of termination, a violation of NYLL § 191(1).

On December 12, 2013, Petitioner filed a Statement of Claim seeking unpaid wages under Article 6 of the NYLL. Respondent brought several counterclaims that were subsequently dropped, (Lahens Dec., Ex. A at 3), and the parties selected a three-member Panel and conducted discovery pursuant to the FINRA Code of Arbitration Procedure for Industry Disputes. A hearing was held the week of January 11, 2016 and on January 21, during the course of which both sides fully presented their cases.

Relevant here, Petitioner's presentation included extensive discussion of Article 6, including each of the above provisions, and the statutory framework of the NYLL. In making out his damages, Petitioner's Statement of Claim (Lahens Dec., Ex. B), Pre-hearing Brief (Lahens Dec., Ex. F), opening statement, and closing argument (Lahens Dec., Ex. G), quoted

7

from and highlighted the following:

> In any action instituted in the **courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover** the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

NYLL § 198(1-a) (emphasis added). The statutes were given to the Panel members on the first day of the hearing, during Petitioner's opening statement. During his closing argument, Petitioner's counsel handed out fresh copies of each provision as he described and analyzed it. (Lahens Dec. Ex. G). Petitioner's damages submission (Lahens Dec. at Ex. H), provided detailed calculations of the statutorily required attorneys' fees. Petitioner's counsel submitted a signed Affirmation of Attorneys' Fees and Costs. (Lahens Dec., Ex. I).

The Panel issued and delivered an Award to the parties on February 3, 2016. It is evident on the face of the Award that Petitioner was the prevailing party, that the Panel found Respondent had violated NYLL §§ 191 and 193 and owed unpaid wages to Petitioner, and that the Panel specifically denied Petitioner attorneys' fees. The Panel listed Petitioner's causes of action in the first paragraph of page two: "[F]ailure to pay earned compensation, violation of New York Labor Law, unjust enrichment and/or restitution, and quantum meruit." (Lahens Dec. Ex. A, 2; Ex. B, ¶¶ 15-34). Petitioner's equitable claims rested upon the same failure to pay wages as his statutory claim and his employment status was undisputed-the dispute would not have been arbitrable before FINRA otherwise.

Petitioner requested relief in the form of "compensatory damages in excess of $200,000, attorneys' fees, interest, costs, expenses, and liquidated damages." (Lahens Dec. Ex. A, 2; Ex. B, 9). The compensatory damages were "for payment of earned compensation well in excess of

$200,000."[5]  (Lahens Dec. Ex. B, 9).  The Panel's "Award" section stated as follows:

> After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1.   Vertical is liable for and shall pay to Claimant compensatory damages in the amount of $50,000 plus interest at the rate of 9% per annum from December 12, 2013 until January 15, 2016.
>
> 2.   Any and all relief not specified herein is denied.

(Lahens Dec., Ex. A). Petitioner had sought $150,000 held in the "reserve" and Respondent asserted that the entire $150,000 was properly deducted from Petitioner's wages and, ultimately, appropriated by Respondent. (Lahens Dec. Ex. J). The parties did not dispute that the "reserve" was deducted from Petitioner's commissions but whether the deductions were lawful. The Panel concluded that deductions amounting to $100,000 were lawful and deductions amounting to $50,000 were unlawful. There is no question that the Panel's Award granted Petitioner unpaid wages pursuant to the NYLL.

## ARGUMENT

Section 1 of the Award, granting Petitioner unpaid wages under NYLL §§ 191 and 193, conformed to the requirements of 9 U.S.C. § 9. Respondent has not timely moved to modify, vacate, or correct the Award. Confirmation is therefore mandatory. *Trustees for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Training Program Fund v. YES Restoration*, 2015 WL 3822764, at *3 (S.D.N.Y. 2015) (citing *D.H. Blair & Co. v. Gottdienier,* 462 F.3d 95, 110 (2d Cir. 2006). In addition, Respondent has offered payment of

---

[5] The Panel made an obvious error in stating that the Petitioner was requesting interest on attorneys' fees but not attorneys' fees: "At the close of the hearing, Claimant requested compensatory damages in the amount of $171,330.00, interest on the reserve account in the amount of $50,769.00, and interest on legal fees in the amount of $5,293.00 from the first day of the month after each amount was withdrawn beginning November 1, 2011." (Lahens Dec., Ex. A, 9). The Closing Argument was replete with requests for attorneys' fees, which were detailed in the Affirmation of Attorneys' Fees and Cost handed to the Panel at the conclusion of the hearing. (Lahens Dec., Ex. G and I).

9

the full amount awarded under Section 1 of the Award. This part of the Award should be confirmed by the Court. Section 2 of the Award, insofar as it denies Petitioner mandatory attorneys' fees is in manifest disregard of the law and should be vacated. 9 U.S.C. § 11(a, c). The Award should be modified to include attorneys' pursuant to the statute.

Modification of an arbitration award is appropriate under 9 U.S.C.. § 11 to adjust the amount and form of damages: "To the extent the Award may reflect a deficiency not touching the merits to the controversy regarding liability, the Court has authority to correct it so as to effect the intent thereof and promote justice between the parties." *Commercial Risk Reinsurance Co.*, 526 F. Supp. 2d at 431. Courts will modify an award issued in manifest disregard of the law. The Second Circuit has established a two-part test for manifest disregard:

> To vacate an award on the basis of a manifest disregard of the law, the court must find something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law. The two part showing requires the court to consider, first, whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable, and, second, whether the arbitrator knew about the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it. In determining an arbitrator's awareness of the law, [courts] impute only knowledge of governing law identified by the parties to the arbitration.

*Rubenstein v. Advanced Equities, Inc.*, 2014 WL at *11 (internal quotations and citations omitted). Considering an arbitrator's failure to apply a similar provision for mandatory attorneys' fees in the Fair Labor Standards Act ("FLSA"), the Second Circuit found the first prong was obviously met:

> Section 626(b) of the ADEA, 29 U.S.C. § 626(b), incorporates by reference 29 U.S.C. § 216(b) of the Fair Labor Standards Act, which states, in relevant part, that "[t]he court ... *shall,* in addition to any judgment awarded to the plaintiff, ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added); see *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 86 (2d Cir.1983) (award of attorney's fees to prevailing

10

>plaintiff is mandatory). The district court found that "it is difficult to imagine a more 'well defined, explicit and clearly applicable' provision of governing law than the ADEA's mandate that successful age discrimination claimants such as plaintiff recover attorney's fees." *DiRussa*, 936 F.Supp. at 106. With this much of DiRussa's argument we agree.

*DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 822 (2d Cir. 1997). There, as here, judgment on the statutory claim rendered the award of attorneys' fees mandatory and automatic. The Second Circuit went on to deny vacatur and modification on the sole ground that the petitioner had failed to meet the second prong:

> [A]t no point did DiRussa communicate—either by written submission or orally—to the arbitrators that the ADEA *mandated* such an award to a prevailing party ... Nowhere in this submission does DiRussa either explain that the ADEA *requires* an award of attorney's fees or quote the language of the relevant ADEA section, which clearly communicates that principle. In view of DiRussa's failure to inform the arbitrators of the relevant legal standard, we are hard-pressed to infer that they consciously disregarded the ADEA's fee provisions.

*Id.* at 823. Applying *DiRussa* in a Title VII case, the court in *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 463 (S.D.N.Y. 1997) found that the arbitrator had failed to award mandatory attorneys' fees under the statute. In this instance, however, the parties had briefed the issue:

> Such a mistake, where the parties have clearly presented the relevant, and very different, standards applicable to the two separate issues, constitutes manifest disregard of the law. The error was "obvious," given the briefing by the parties, and was "capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," given the prominence and general awareness of the doctrine affording attorney's fees to prevailing plaintiffs. *DiRussa,* 121 F.3d at 821 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986)). The conclusion is therefore unavoidable that the Arbitration Panel "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it," *id.,* a conclusion sufficient, as an initial matter, to warrant modifying the Arbitration Panel's award so as to provide an award of fees to DeGaetano.

11

*Id.* at 464 (internal footnote omitted).  *See*, *e.g.*, *Williamson v. Pub. Stores, Inc.*, 2004 WL 491058 at *3 (D. Conn. 2004) ("Because Title VII is the 'applicable law,' the arbitrator must comply with its provisions regarding fee awards.  Any failure to do so would be subject to judicial review."); *Bowery Residents' Comm., Inc. v. Lance Capital, LLC*, 121 A.D.3d 505, 505 (1st Dept 2014) (finding same principle applied to mandatory contractual provisions on identical state law grounds, vacating part of award denying attorneys' fees and remanding to trial court to ascertain fees and modify award accordingly).

It is worth noting that Title VII's attorneys' fee provision states only that "the court, in its discretion, **may** allow the prevailing party...a reasonable attorney's fee." 42 U.S.C. § 2000e–5(k). (emphasis).  In recognition of the larger statutory scheme, the Supreme Court has construed the statute as mandatory, or near-mandatory, "[e]stablishing a presumptive entitlement to an award of attorney's fees for prevailing parties."   *DeGaetano,* 983 F. Supp. at 462.  No such judicial construction is necessary here: "In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court **shall allow** such employee to recover the full amount of any underpayment, all reasonable attorney's fees…" NYLL § 198(1-a) (emphasis added).  This is the same language upon which the *DiRussa* court found that "it is difficult to imagine a more 'well defined, explicit and clearly applicable' provision of governing law than the ADEA's mandate that successful age discrimination claimants such as plaintiff recover attorney's fees."

Having found for Petitioner on his claim for unpaid wages under Article 6, the Panel was *required* to award attorneys' fees.  It was also *aware* of this requirement.  Petitioner's Statement of Claim quotes the relevant provision of the NYLL, as does its Pre-Hearing Brief and closing statement.  The statutes were provided to the Panel from day one of the hearing and additional copies were passed out and explained on the last day of the hearing.  There is simply no question

in this case that attorneys' fees should have been awarded to Petitioner and that the Panel denied them in manifest disregard of the law.

## CONCLUSION

This is a case in which vacatur and modification are straightforward and unavoidable: The clear language of the Award flatly contradicts the clear language of a controlling statute, the pleadings and hearing record incontrovertibly establish that the Panel was presented with the controlling statute and explicitly informed that its provisions were mandatory, and the defect in the Award is easily remedied without touching upon the merits of the dispute. The FAA, the substantive federal law of arbitration and this Court's precedent overwhelmingly favor modification of the Award such that it grants Petitioner attorneys' fees.

The Court should grant the Petition confirming Section 1 of the Award, vacating Section 2 and modifying the Award to include the statutorily mandated attorneys' fees, and entering judgment thereon.

Dated: New York, New York
May 2, 2016

**LAX & NEVILLE, LLP**

By: /s/ Barry R. Lax
Barry R. Lax, Esq. (BN8251)
Sandra Lahens, Esq. (SE0513)
1450 Broadway, 35th Floor
New York, NY 10018
Tel: (212) 696-1999

*Attorneys for Petitioner*
*James Anglim*

13